Opinion filed March 8, 2012



In The

# Eleventh Court of Appeals

_____

No. 11-11-00078-CV

_____

## IN THE INTEREST OF Z.G., L.H., A.B., AND L.W., CHILDREN

On Appeal from the County Court at Law

Midland County, Texas

Trial Court Cause No. FM 50,995

## MEMORANDUM OPINION

The trial court entered an order terminating the parental rights of the mother and the fathers of Z.G., L.H., and L.W. In the same order, the trial court awarded managing conservatorship of A.B. to a paternal relative and possessory conservatorship to A.B.'s father, but did not terminate either parent's rights to A.B. The children's mother (Candice) and the father of Z.G. and L.W. (John) have each filed a notice of appeal. We affirm.

### *Issues*

Candice presents seven issues for review, and John presents two issues. In her first and second issues, Candice asserts that the evidence is legally and factually insufficient to support the finding that she knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children. In her

third and fourth issues, Candice challenges the legal and factual sufficiency of the evidence supporting the finding that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. In her fifth and sixth issues, she challenges the trial court's finding that termination of her parental rights is in the best interest of the children. In her seventh issue, Candice argues that the trial court erred in awarding sole managing conservatorship of A.B. to a relative, Sheila, because Sheila was not a party to the suit and because the pleadings did not support such an award. In his first issue, John contends that TEX. FAM. CODE § 263.405 (2007)[1] is unconstitutional and that the trial court abused its discretion in finding John's appeal frivolous under that statute. In his second issue, John argues that the evidence is legally and factually insufficient to support the trial court's findings regarding best interest, endangering conduct, and constructive abandonment.

*Frivolous Appeal*

The trial court signed the order terminating parental rights on March 30, 2011. John and Candice each filed a statement of points for appeal, challenging the sufficiency of the evidence to support the trial court's various findings. On May 9, 2011, the trial court held a Section 263.405(d) hearing regarding frivolousness and ultimately determined that John's appeal was frivolous because he did not present a substantial question for review. The trial court entered orders regarding frivolousness on May 17, 2011. The appellate record contains the reporter's record from the Section 263.405(d) hearing and the reporter's record from the termination hearing. We hold, contrary to the assertion made in the appellee's brief, that John invoked this court's jurisdiction by filing his notice of appeal. We also hold that John has asserted challenges to the sufficiency of the evidence that present an arguable basis for appeal and are not frivolous. *See In re K.E.L.*, No. 11-10-00144-CV, 2011 WL 2204071 (Tex. App.—Eastland June 2, 2011, no pet.) (mem. op.); *In re Q.W.J.*, 331 S.W.3d 9 (Tex. App.—Amarillo 2010, no pet.).[2] Accordingly, we will address the merits of the challenges to the sufficiency of the evidence

---

[1]We note that Section 263.405 has been drastically amended and partially repealed and no longer contains the provisions about which John complains in this appeal. The amendments took effect on September 1, 2011, while this case was pending in this court. Act of April 29, 2011, 82nd Leg., R.S., ch. 75, §§ 4, 5. In this opinion, we refer to the version of Section 263.405 that was in effect at the time of the trial court's order.

[2]In making a frivolous determination under Section 263.405(d), a trial court was not to decide the merits of a party's appeal; that task fell within the province of an appellate court. *In re Q.W.J.*, 331 S.W.3d at 14. Instead, the trial court was to determine whether there was an arguable basis for an appeal, i.e., whether the issues raised were frivolous. *Id.* Sufficiency of the evidence is an arguable issue in an appeal from a contested termination proceeding. *Id.*

presented in John's second issue. John's first issue is sustained in part, and his challenge to the constitutionality of Section 263.405 is moot.

*Legal and Factual Sufficiency*

Candice and John both challenge the legal and factual sufficiency of the evidence supporting termination. With respect to the legal and factual sufficiency challenges, termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001.

*A. Candice's Appeal*

In this case, the trial court found that Candice committed three of the acts listed in Section 161.001(1). The trial court found that she had knowingly placed or knowingly allowed Z.G., L.H., and L.W. to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, had engaged in conduct or knowingly placed Z.G., L.H., and L.W. with persons who engaged in conduct that endangered the physical or emotional well-being of the children, and had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Z.G., L.H., and L.W. who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent for abuse or neglect. *See id.* § 161.001(1)(D), (E), (O). The trial court also found that termination of Candice's rights was in the best interest of Z.G., L.H., and L.W. *See id.* § 161.001(2).

On appeal, Candice does not challenge the trial court's finding under Section 161.001(1)(O) that she failed to comply with the provisions of a court order that

specifically established the actions necessary for her to obtain the return of Z.G., L.H., and L.W. The unchallenged finding, which is supported by the evidence, is sufficient to support termination as long as termination was shown to be in the children's best interest. *See* Section 161.001; *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied). Therefore, we must address Candice's fifth and sixth issues concerning best interest, but we need not reach the merits of her first, second, third, and fourth issues as they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1; *In re B.K.D.*, 131 S.W.3d at 16.

The question we must address is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that, on April 21, 2010, authorities were dispatched to the house where Candice lived with her four children: Z.G., age 10; L.H., age 4; A.B., age 3, and L.W., age 1. Cassandra Nunez, a mental health officer with the Midland County Sheriff's Office, testified that she was called to assist Adult Protective Services to perform a welfare check on Candice. When Officer Nunez arrived, Candice was crying and asked for help. According to Officer Nunez, Candice was showing signs of emotional distress, paranoia, and maybe some psychosis. Candice said she was "in a bad place" at that time in her life, "a really down point." Candice was talking about "psychic networks," saying that her mother and another woman were "actually getting into her head" and that she could not keep a job or go out in public because she heard people "talking about her future." Officer Nunez testified that Candice was not capable of caring for the children

at that time. Officer Nunez called Child Protective Services and then took Candice to Midland Memorial Hospital.

Melissa Walker, an investigator with Child Protective Services, testified that she was the removal worker in this case in 2010 and that she had also been involved with Candice and her children in 2008. The Department of Family and Protective Services became involved with Candice in 2008 when L.H. was found walking unsupervised down a busy highway. It was also determined at that time that Candice had been leaving the children in the care of a registered sex offender. The Department instituted a safety plan in 2008. Walker testified that, when she went to visit Candice in the hospital on April 21, 2010, Candice told her that she was having a lot of issues; that the "Psychic Network was in her head and was giving people information about her"; that there are people "going into the future and changing things in the future"; and that, when she goes to Wal-Mart, "everybody is looking at her because they know that they are victims in her head." Walker testified that Candice was not making much sense and that she talked very little about the children.

Candice was treated and placed on medication for depression. Candice subsequently quit taking the medication when she felt she no longer needed it. She testified that her doctor later approved of her decision to quit taking her medication. A licensed professional counselor, who counseled Candice in June and July 2010, testified that Candice's depression affected her parenting and her ability to keep a job. The counselor also testified that Candice was withdrawn and distant and that the parent-child bond between Candice and her children was lacking.

Testimony showed that Candice had struggled with major depression since L.H. was born. Candice's mother testified that Candice's depression "affects everything" and that Candice seemed to have "this psychic stuff" in her head. At the time of trial, Candice lived with her mother and her mother's boyfriend in a one-bedroom mobile home. Candice slept on the couch. Candice's mother, who for health reasons was not able to take the children, pleaded for a little more time for Candice to get herself together. According to Candice's mother, Candice had provided a safe and stable home environment for the children from 2005 to 2008 but that it had been "iffy" since then. Candice's mother agreed that, at the time of trial, Candice could not provide a safe environment for the children.

The record also reflects that the Department was concerned about Candice's use of drugs. During the period after removal and prior to trial, Candice failed to show up for several

scheduled drug tests. She tested positive for marihuana in four or five separate drug tests during that time period, including the most recent test she had taken. Candice tested negative in only three of her drug tests. Furthermore, Candice failed to complete the required outpatient program for the treatment of substance abuse.

Testimony showed that, at the time of Candice's hospitalization and the children's removal, Candice's home was not a safe environment for the children. The house was "filthy," and there was no edible food in the house. The refrigerator was not working properly, and it contained flies and rotten food. The children's hygiene was poor. Z.G. was at home, instead of at school, just because Candice did not take him to school that day. Z.G. appeared at that time to be attentive to the needs of his younger siblings and to have taken on the role as their caregiver. Candice testified at trial that, on the day she was hospitalized, she was a capable caregiver for her children.

After their removal, Z.G. and L.H. had episodes in which they separately exhibited troubling behavior and were temporarily placed in a psychiatric hospital. L.H. slammed another child's finger in a door and laughed hysterically when the child's finger began bleeding; L.H. exhibited no signs of empathy. Z.G. had uncontrolled outbursts and behaviors, stood outside in the rain crying and laughing hysterically stating that "it" was just "too much" for him, and reported that his mother had thrown knives at him. During a permanency conference, a Department supervisor and a program director both questioned Candice about her disciplinary methods. Candice answered affirmatively when asked whether "she had ever thrown knives at [Z.G.] or the other children or other items." At trial, however, Candice emphatically denied that she had ever made such an admission.

Z.G., L.H., and L.W. were ultimately placed together in a foster home in Fort Worth with foster parents who desired to adopt all three boys. None of the children testified at trial, and no evidence was offered regarding the desires of the children. There was evidence that Z.G.'s and L.H.'s behavioral issues had improved since being placed in the foster home.

Based on the evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction that termination of Candice's rights would be in the best interest of Z.G., L.H., and L.W. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the

finding that termination of Candice's parental rights is in the best interest of Z.G., L.H., and L.W. Candice's fifth and sixth issues are overruled.

### B. John's Appeal

The trial court found that John had engaged in conduct or knowingly placed Z.G. and L.W. with persons who engaged in conduct that endangered the physical or emotional well-being of the children and that John had constructively abandoned Z.G. and L.W. because they had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and (1) the Department or authorized agency had made reasonable efforts to return the children to John, (2) John had not regularly visited or maintained significant contact with the children, and (3) John had demonstrated an inability to provide the children with a safe environment. *See* Section 161.001(1)(E), (N). The trial court also found that termination of John's rights was in the best interest of Z.G. and L.W. *See* Section 161.001(2).

The record shows that Candice was essentially the sole parent for her children and that John did not see Z.G. often, had never paid any child support, and was not there for Z.G. emotionally. John had never seen L.W. John had denied that there was even a possibility that he was L.W.'s father. However, a paternity test, which was conducted in conjunction with these proceedings, showed that John was L.W.'s father. John was incarcerated at the time of trial for the offense of possession of a controlled substance in a correctional facility. John had prior convictions for unauthorized use of a motor vehicle and for possession of a controlled substance. He had been in county jail ten to fifteen times and had spent nine months in a state jail facility. John admitted that he had not performed the service plan, that he had not visited Z.G. after the Department removed Z.G. from Candice's care in April 2010 even though John was not incarcerated until July 2010, and that he had tested positive for cocaine and marihuana in a drug test performed at the request of the Department in May 2010. John testified that he did not use cocaine and that the cocaine must have "showed up through [his] pores." When asked how often he smoked marihuana, John testified, "Not that much. Probably two, three times a week."

Adriana Mendoza, the supervisor for the conservatorship unit of the Department in Midland County, testified that John was not a significant father figure to Z.G. or L.W., that John had not demonstrated an ability to provide a safe and stable environment for his children, that the Department had made reasonable efforts to return the children to John, that John had not

demonstrated the ability to maintain employment, that John had tested positive for cocaine and marihuana, that John had not maintained a significant relationship with Z.G. or L.W., and that John had had no contact of any sort with either of the children after their removal. Mendoza testified that, throughout this case and before this case began, John put his needs before those of his children. Mendoza was of the opinion that termination of John's parental rights would be in Z.G.'s and L.W.'s best interest so they could have a safe and stable environment with a caregiver who had a vested interest their future and in their well-being.

To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *Id.* Subjecting children to a life of uncertainty and instability may also endanger their physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). To support termination for constructive abandonment under Section 161.001(1)(N), it must be shown that the Department or an authorized agency had been the managing conservator of the child for not less than six months, that the Department or authorized agency had made reasonable efforts to return the child, that the parent had not regularly visited or maintained significant contact with the child, and that the parent had demonstrated an inability to provide the child with a safe environment.

In this case, there was evidence that John engaged in a course of conduct that endangered his children's well-being. He had been in and out of prison or jail numerous times, and he abused drugs. There was also evidence that John had constructively abandoned Z.G. and L.W. The children had been under the managing conservatorship of the Department for eleven months. The Department had attempted to place John's children with him when they were removed from Candice's care, but John was not a suitable placement. The Department made reasonable efforts to work with John. John failed to contact either child by any means while they were in the Department's care. There was also evidence that John was unable to provide his children with a safe environment. The trial court's findings under Section 161.001(1)(E) and (N) are supported by the record.

Furthermore, the trial court's finding as to best interest is also supported by the record. In addition to the evidence that supports the findings regarding abandonment and endangering

8

conduct, there was evidence that John had no real relationship with either child and that he could not provide a safe and stable environment for them. There was also evidence that Z.G. and L.W., along with their brother, had been placed together in a foster home in Fort Worth and that the foster parents wanted to adopt all three boys. Evidence showed that Z.G.'s emotional well-being had improved during his time in the foster home. Neither Z.G. nor L.W. testified at trial, and no evidence was offered regarding their desires.

Based on the evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction (1) that John had either constructively abandoned Z.G. and L.W. or engaged in a course of conduct that endangered the physical or emotional well-being of Z.G. and L.W. and (2) that termination of John's rights would be in the best interest of Z.G. and L.W. We cannot hold that the trial court's findings are not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the findings regarding John and his children. John's second issue is overruled.

### Conservatorship of A.B.

In her seventh issue, Candice complains that the trial court erred in awarding sole managing conservatorship of A.B. to Sheila because the pleadings did not support such an award and because Sheila was not a party to the lawsuit. First, we note that Candice waived this complaint by failing to urge it at trial or in her statement of points for appeal. *See* Section 263.405(i); *In re J.H.G.*, 302 S.W.3d 304, 305 (Tex. 2010). Second, we disagree with Candice's contention that her complaint involves subject-matter jurisdiction or standing. Citing to TEX. FAM. CODE ANN. § 102.004(b) (West 2008), Candice suggests that Sheila must have intervened to be eligible to be appointed as A.B.'s conservator. Section 102.004(b) is not applicable in this case as this case was instituted by the Department for the children's protection. *In re C.S.*, 264 S.W.3d 864, 869 (Tex. App.—Waco 2008, no pet.). The trial court's jurisdiction was invoked by the Department's pleadings requesting that Candice's parental rights to all of her children be terminated and that the children be permanently placed with a relative or other suitable person as the permanent sole managing conservator. A.B. had been placed with Sheila, a paternal cousin, prior to trial. Sheila was identified in the permanency plan as an appropriate relative caregiver for A.B. It was the Department's recommendation that A.B. remain with Sheila and that Sheila be appointed as A.B.'s conservator. We hold that the trial court had the authority to appoint Sheila as A.B.'s managing conservator. *See* TEX. FAM. CODE ANN.

9

§§ 161.205, 263.404 (West 2008); *In re C.S.*, 264 S.W.3d at 869. Candice's seventh issue is overruled.

The order of the trial court is affirmed.


                                                    JIM R. WRIGHT

                                                    CHIEF JUSTICE


March 8, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.